# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

May 25, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

BILL MASON and )
JOHN McKNIGHT, )
　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs/Appellants, )
　　　　　　　　　　　　　　　　　)　　Appeal No.
　　　　　　　　　　　　　　　　　)　　01-A-01-9806-CH-00283
VS. )
　　　　　　　　　　　　　　　　　)　　Davidson Chancery
　　　　　　　　　　　　　　　　　)　　No. 92-3614-II
METROPOLITAN DEVELOPMENT )
AND HOUSING AGENCY, et al., )
　　　　　　　　　　　　　　　　　)
　　　　Defendants/Appellees. )

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. McCOY, CHANCELLOR

DAVID L. COOPER
COLUMBA A. MCHALE
1000 Northchase Drive, Suite 110
P. O. Box 749
Goodlettsville, Tennessee 37070-0749
　　　　Attorneys for Plaintiffs/Appellants

GEORGE E. BARRETT
217 Second Avenue North
Nashville, Tennessee 37201
　　　　Attorney for Defendants/Appellees

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
CAIN, J.
COTTRELL, J.

# O P I N I O N

Two employees of the Metropolitan Housing and Development Agency (MDHA) brought suit against their supervisor, the agency, and the agency's director, claiming that the supervisor had discriminated against them in violation of federal and state laws. The trial court dismissed the claims. We affirm the trial court.

## I. The Complaint

Bill Mason and John McKnight, both African-Americans, were veteran employees in the paint department of MDHA, with over forty years of experience between them. After William Hickey became director of operations for the agency, Mr. Mason was demoted from paint supervisor to paint leader, though he was not reprimanded and not subjected to any disciplinary proceeding. His supervisory duties were reduced so that he eventually wound up supervising only one man, Mr. McKnight.

John McKnight had previously worked with individuals of all races at different MDHA facilities. Under Mr. Hickey, he was put on permanent station at Vine Hill Homes, where he was assigned to a crew made up of himself, Mr. Mason, and one other African-American painter. Later, he and Mr. Mason were transferred to the Hadley Park Towers.

In November of 1991, Mr. Mason applied for a supervisory position. The agency appointed a younger man to that position, a white male named Ed Cothran, who had less seniority at MDHA than Mr. Mason, and less supervisory experience.

Mr. Mason's duties included evaluating Mr. McKnight's performance. In February of 1992, Mr. Mason prepared an evaluation that rated Mr. McKnight's performance as "above standard." Mr. Hickey objected to the rating, and prevailed upon Mr. Mason to lower it to "standard." Mr. Hickey declined to sign the evaluation.

On December 12, 1992, the plaintiffs filed suit, claiming that Mr. Hickey's actions were part of a larger pattern of racial discrimination at MDHA, undertaken with the "demonstrated intention to make the painter position at MDHA a predominately 'white' job." Mr. Mason also claimed that the failure to promote him amounted to age discrimination. The plaintiffs asked for actual damages, and for punitive and compensatory damages of $250,000, pursuant to Title VII of the Civil Rights Act of 1964, and to the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, et seq. They later dropped their claims under federal law, and agreed to make the Tennessee Human Rights Act the sole basis of their action.

## II. Proceedings in the Trial Court

After the complaint was filed, the lawsuit progressed at a snail's pace. It was dismissed once for lack of prosecution, and subsequently reinstated, before it was finally dismissed on summary judgment on October 22, 1996.

Most of the delay can be attributed to Mr. Drummond, the plaintiffs' attorney. He drafted and filed numerous motions (including four to be allowed to withdraw as the attorney of record) but they were frequently ineffectual, either because he filed his motions in an untimely way, failed to schedule hearings on the motions, failed to file supporting documents to support the motions, or failed to serve opposing counsel. Disputes over discovery also hampered progress on this case. The following account is a bare outline of those proceedings which moved the case forward. It omits most of the filings and maneuvers which ultimately served only to delay the final resolution.

MDHA responded to the complaint on May 13, 1993. The agency claimed that the plaintiffs' allegations as to the defendants' intentions or motives

amounted to conjecture and supposition, and did not state facts to which an appropriate response could be made. They also advanced two affirmative defenses: that the plaintiffs had failed to exhaust their administrative remedies, because they had failed to file grievances in accordance with the procedures outlined in the Affirmative Action Plan for MDHA; and that the one-year statute of limitations for filing a claim under Tenn. Code Ann. § 4-21-101 had passed before they filed.

On July 17, 1994, the defendants filed a motion for judgment on the pleadings under Tenn. R. Civ. P. Rule 12.03. A hearing on the motion was scheduled for September 16, 1994. At 4:14 P.M., on the day before the scheduled hearing, the plaintiffs filed a motion to amend their complaint, and for the court to defer its ruling on the defendants' motion until after amendment of the complaint. A copy of the amended complaint was not attached to the motion.

The trial court declined to defer its hearing. It found the defendants' motion for judgment on the pleadings to be well-taken, and dismissed all of the plaintiffs' claims as time-barred, except for Mr. McKnight's claim relating to the lowering of his evaluation in 1992. Shortly thereafter plaintiffs filed a motion to alter or amend the judgment, which stated, "[p]rior to the hearing of this motion, plaintiffs will submit a copy of the proposed amended complaint." A proposed amended complaint was filed on December 7, 1994.

However, Mr. Drummond did not schedule a hearing on the plaintiffs' motion until April of 1996. Following that hearing, the trial court denied the motions to alter and amend the judgment, for additional findings of fact, and to amend the complaint, because of undue delay and futility. The court found that the proposed amended complaint lacked specificity, and did not allege conduct by the defendants occurring within the limitations period.

- 4 -

On May 13, 1996, the defendants filed a Motion for Summary Judgment on the remaining claim of Mr. McKnight. After a hearing, the trial court granted summary judgment to the defendants, and it dismissed the action on July 11, 1996.

The plaintiffs subsequently filed a motion to alter or amend the judgment, and the defendants moved the court to impose Rule 11 sanctions upon Mr. Drummond for rule violations. A hearing was held on both motions, and on October 22, 1996, the trial court dismissed the plaintiffs' motion to alter or amend, and imposed sanctions of $2,000 in attorney fees upon Mr. Drummond for rule violations during the course of litigation.

Mr. Drummond filed a notice of appeal from the order of sanctions. He failed to file a brief, despite being granted an extension of time, and we accordingly dismissed that appeal. Mr. Mason and Mr. McKnight filed pro-se notices of appeal from the dismissal of their claims. They subsequently engaged another attorney to argue their case.

The appellees have raised an issue as to whether this court can even consider this present appeal, arguing that the notices of appeal were not timely filed. Without getting into too much detail, we find that the plaintiffs' motion to alter or amend, while defective in some respects, was timely, and that it thus served to toll the time limit for filing a notice of appeal, rendering that notice timely as well.

### III. The Motion to Amend and the Judgment on the Pleadings

Appellants argue that the trial court abused its discretion by rendering a judgment on the pleadings without first considering the motion to amend the complaint. However, in view of the fact that their late-filed motion was not accompanied by the proposed amended complaint, and that they failed to schedule

a hearing on the motion, we can find no abuse of discretion in the trial court's action. If we found that such a tardy and insubstantial effort barred the court from proceeding with its previously scheduled hearing, we would be placing a tool for delay in the hands of those who wish to hinder the work of the court solely for their own advantage.

Turning to the judgment itself, we must first note that in ruling on a Rule 12.03 motion, the trial court must take as true all the facts alleged in the complaint, and determine whether those facts state a cause of action that should be decided by a jury. *Gray v. McDonald's Corporation*, 874 S.W.2d 44 (Tenn. App. 1993).

The statute of limitations for filing complaints under the Tennessee Human Rights Act is one year. Tenn. Code Ann. § 4-21-311(d). The original complaint only cited actions by Mr. Hickey that occurred more than one year before the complaint was filed, with the exception of his role in getting Mr. Mason to lower the evaluation of Mr. McKnight. Thus, assuming the truth of all the allegations of fact stated by the plaintiffs, the trial court was correct in granting judgment to the defendants on all issues except for the evaluation.

The appellants argue, however, that the trial court erred, because under the continuing violation doctrine, it could consider all of the alleged discriminatory acts, without regard to the statute of limitations. That doctrine was first developed by the federal courts in their interpretation of federal anti-discrimination legislation, and was subsequently adopted by the Tennessee Supreme Court in *Spicer v. Beaman Bottling Co.*, 937 S.W.2d 884 (Tenn. 1996). The gist of the doctrine is that a plaintiff may challenge "an ongoing, continuous series of discriminatory acts, as long as one of those discriminatory acts falls within the limitations period." 937 S.W.2d at 886.

However, the Court also stated in the *Spicer* case that there are only two circumstances in which the continuing violation doctrine applies. 937 S.W.2d at 889. The first is when "there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation." The second is when "there has been a long-standing and demonstrable policy of discrimination." In order to make a claim under this second circumstance, "The plaintiff must clearly demonstrate some 'overarching policy of discrimination,' and not merely the occurrence of an isolated incident of discriminatory conduct."

The complaint contains no evidence to indicate that the supervisor is continuing to subject the plaintiffs to adverse personnel actions. In fact, there are no indications in the record that Mr. Hickey is still employed by MDHA. Further, although the complaint does speak of a pattern of discrimination, and alleges that Mr. Hickey was determined not to hire or promote black supervisors, there are no facts alleged as to any specific qualified supervisory candidates being denied employment or promotion on the basis of race, with the exception of Mr. Mason. Thus, the plaintiff has failed to clearly demonstrate an overarching pattern of discrimination such as would require the application of the continuing violation doctrine.

## IV. Summary Judgment

The sole remaining claim in this case was stated in Paragraph 14 of the plaintiffs' complaint as follows:

14.    Discriminatory Evaluation of black workers

14.1    MDHA has instituted a policy and practice of giving black workers generally lower evaluations than those given white workers. Specifically, in or around February of 1992, Hickey, acting in concert with Cothran and Wright, sought to influence Mason to re-do his evaluation of McKnight in such a way as to lower the overall rating. Against his own judgment and preference, Mason agreed finally to lower the evaluation ratings in specific areas so as to lower the overall rating on McKnight.

14.2 Even with the lower evaluation of McKnight requested by Cothran of Mason, Hickey refused to sign McKnight's evaluation. Hickey's refusal to sign McKnight's evaluation constitutes a deliberate and malicious act of discrimination in that McKnight will not be eligible for raises and other benefits of employment, including consideration for promotion because of Hickey's refusal to endorse the evaluation.

Summary judgment should be granted when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. Rule 56.03. When a properly-supported motion for summary judgment is filed, the non-moving party may not rest upon the mere allegations or denials of its pleading, but must respond by setting forth specific facts to show that there is a genuine issue for trial. Such facts may be established through sworn affidavits, which must be based upon personal knowledge. Tenn. R. Civ. P. Rule 56.05.

We have examined the defendants' motion for summary judgment, the plaintiffs' response, the defendant's reply to that response, the proposed amended complaint, and the affidavit of Mr. McKnight. There is no dispute that Mr. Hickey refused to sign Mr. McKnight's evaluation, but the plaintiff has offered no evidence, either direct or indirect, to support Mr. McKnight's allegations that black workers were generally given lower evaluations than white ones. There is also no evidence in the record that Mr. McKnight had been denied any pay raises that he was entitled to, or that he had applied for any promotions. There is evidence, however, that because of a back injury, Mr. McKnight missed a total of 39 days of work during the evaluation period.

Judging from the following excerpts from Mr. McKnight's affidavit, it appears that the supervisors's actions against him were based upon personal animosity:

4. In October of 1990, after Mr. Hickey had taken over

. . . I said something in a meeting which apparently offended him. [He] told me later that if the Agency were a private company and if he had his way, he would have me fired. Specifically, he referred to how I had 'jerked him around' in that meeting, and said he would have me fired if he could. It was after that I noticed a distinct change in the way I was treated in the workplace at MDHA.

. . .

6. After the negative encounter with Mr. Hickey, I did something else that caused Mr. Hickey to target me for special treatment. Specifically, I noticed that Mr. Hickey began to treat me very differently after I participated in a grievance hearing that Mr. Mason had initiated against Mr. Hickey. In that grievance hearing, I testified in behalf of Mr. Mason.

Mr. McKnight went on to state that it was after these negative encounters that Mr. Hickey assigned him to the all-black crew at Vine Hill Homes, and manipulated his evaluation. He claimed that Hickey never even visited the workplace at Vine Hill, and thus had no basis for evaluating his work. The plaintiff also stated that his performance evaluation meant a lot to him, and that he was insulted and humiliated by being singled out for such unfair treatment.

If John McKnight's allegations are true, we can at most conclude that William Hickey was a vindictive and incompetent administrator. However, Mr. McKnight does not allege any adverse consequences related to his work. Therefore, he does not state a claim under the Tennessee Human Rights Act.

**V.**

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County, for further proceedings consistent with this opinion. Tax the costs on appeal to the appellants.

_____

                                    BEN H. CANTRELL,
                                    PRESIDING JUDGE, M.S.


CONCUR:


_____
WILLIAM B. CAIN, JUDGE


_____
PATRICIA J. COTTRELL, JUDGE